# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELO T. DIBARTOLO and** | : | **CIVIL ACTION** |
| **STEVEN CASTILLO,** | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| **LANCE BACHMAN, et al.,** | : | **NO. O2-CV-03813** |
| **Defendants** | : | |

## <u>ORDER</u>

**AND NOW**, this        day of                                , 2003, upon consideration of

Defendant Jennifer Gallagher's Motion for Summary Judgment pursuant to Federal Rule of Civil

Procedure 56(c), it is hereby **ORDERED** that Defendant's Motion is **GRANTED**. Plaintiff's

claims against Jennifer Gallagher are **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____

Giles, J.

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELO T. DIBARTOLO and | : | CIVIL ACTION |
| STEVEN CASTILLO, | : | |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| LANCE BACHMAN, et al., | : | NO. O2-CV-03813 |
| **Defendants** | : | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT JENNIFER GALLAGHER

Defendant Jennifer Gallagher hereby files this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  As set forth in more detail in the accompanying Memorandum of Law, incorporated herein by reference as though fully set forth at length, the pleadings, answers to interrogatories, answers to document requests and admissions on file, show that there is no dispute as to any material fact, and that the undisputed facts demonstrate Gallagher was not acting under color of state law, was involved in neither the arrest nor the imprisonment of either plaintiff, and did not engage in the malicious prosecution of either of them.  Further, under the applicable legal authority, Gallagher is entitled to a judgment in her favor as a matter of law.

WHEREFORE, Gallagher respectfully requests that this Court enter a judgment in her favor and against the Plaintiffs on all counts of Plaintiffs' Complaint.

Respectfully submitted,


Dated: April 4, 2003          _____

Timothy L. Strange
Monteverde McAlee & Hurd
1617 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA 19103
(215) 557-2900

Attorneys for Defendant Jennifer Gallagher

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA


ANGELO T. DIBARTOLO and      :          CIVIL ACTION
STEVEN CASTILLO,              :
     **Plaintiffs**           :
                             :
          v.              :
                             :
LANCE BACHMAN, et al.,       :          NO. O2-CV-03813
     **Defendants**         :


**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF DEFENDANT JENNIFER GALLAGHER**


Defendant Jennifer Gallagher hereby moves for summary judgment on all claims made

by plaintiffs against her. As more fully set forth herein, plaintiffs' civil rights claims against

Gallagher can survive summary judgment only if plaintiffs can establish that Gallagher was

acting under the color of state law and  violated the constitutional rights of plaintiffs.  In this

case, plaintiffs have adduced no such evidence.  Accordingly, plaintiffs' constitutional claims

against Gallagher  fail as a matter of law. Also, plaintiffs cannot sustain the burden of proof

imposed on them in order to prevail on the state law tort claims of "false arrest/false

imprisonment" and "malicious prosecution" against Gallagher.


**I.**      **PROCEDURAL HISTORY**

Plaintiffs instituted this lawsuit by filing a Complaint on May 23, 2002, in the Court of

Common Pleas of Philadelphia, Pennsylvania.  Plaintiffs named as defendants Lance Bachman,

Adam Bachman, Jennifer Gallagher, City of Philadelphia ("City"), City of Philadelphia Police

Department ("Police Department"), and 2711 D&P, Inc., T/A Wade's Irish Pub, and Wade

Incorporated (collectively, "Wade").  A copy of plaintiffs' Complaint is attached hereto as

Exhibit "A". The City removed this case to Federal Court on June 18, 2002.

As against Jennifer Gallagher, plaintiffs allege that she violated their civil  rights

protected by 42 U.S.C. §1983. They claim that Gallagher was acting under color of state law

when she falsely arrested and imprisoned plaintiff DiBartolo and subjected him to malicious

prosecution.  Plaintiffs also allege that Gallagher obstructed justice, falsified police reports and

conspired with others to deprive plaintiffs of their constitutional rights under 42 U.S.C. §1983.

Exh. "A", Count VI.  Plaintiffs further aver that Jennifer Gallagher committed the state law torts

of false arrest and/or imprisonment and malicious prosecution.  Exh. "A", Counts VII and VIII.

## II.    FACTUAL SUMMARY

This lawsuit stems from an incident that occurred inside Wade's, a bar located in

Northeast Philadelphia, on June 8, 2000.  Plaintiffs DiBartolo and Castillo were involved in a

physical altercation with a group of persons including defendants Lance Bachman and his

brother Adam Bachman.  Exh. "A", ¶ 15-17.  According to DiBartolo and Castillo, the fight

began inside the pub.  DiBartolo later recalled , in a letter he wrote describing the incident and

submitted to the Police Department, that he noticed a friend of his involved in an argument.  So

he "went over to the group and asked what the problem was.  Before I could completely ask I

was hit with several bottles on my head."  See Letter from DiBartolo to Police Department dated

1

December 17, 2001, a copy of which is attached hereto as Exhibit "B".[1]  Thereafter, according to

Castillo, "Angelo was pushed out the door" and he followed.    See Statement of Castillo dated

June 8, 2000, a copy of which is attached hereto as Exhibit "C".  DiBartolo added that "[t]he bar

bouncers locked me in a grip and I was being punched the entire time I was being literally

thrown out of the bar."  See statement of DiBartolo dated June 9, 2000, a copy of which is

attached hereto as Exhibit "D".

Outside of Wade's, DiBartolo and Castillo were confronted by the same

individuals they fought with inside.  DiBartolo later reported to the Police Department that

"[w]hen they noticed me they all charged me.  I tried to retreat and was asking them to 'let it be'

and that 'I did not want to fight.'  They told me that 'I should have thought about that in the first

place.'  I was struck on the head with another bottle by [defendant] Lance Bachman.  I was able

to take his fe[e]t from under him and threw him on the ground.  I was attempting to hold him

down, at which time his brother, [defendant] Adam Bachman slashed me on the side of my

face/jaw with a broken bottle. Exh. "B" at 1-2.

At this point, according to DiBartolo, "a female, Jennifer Gallagher, pulled

up to the scene in a small white car.  She yelled for the group to 'hurry up and get in the car.'  At

the same time Lance [Bachman], Adam [Bachman], Jennifer [Gallagher] and possibly 2 others

jumped into her car."  Exh. "B" at 2.

Gallagher was an off-duty Police Department officer who had gone to Wade's

---

[1] Exhibits "B"-"F", "H" and "I" hereto are, to the best of Gallagher's knowledge, information and belief, true and correct copies of records maintained by the Police Department in connection with its investigations of the incident giving rise to the Complaint.  They were produced by the Police Department in this case.

with her then-boyfriend, Lance Bachman.  The Police Department investigation does not suggest,

and plaintiffs do not aver, that she was involved in the physical altercation inside or outside of

Wade's.  Plaintiffs do not claim she spoke to them at any time.  Gallagher was wearing civilian

clothes, and plaintiffs do not contend that she displayed a badge or identification card, otherwise

identified herself as a police officer, or either used or displayed a service revolver or other

weapon.

Furthermore, Gallagher did not place either plaintiff under arrest.  Rather, immediately

following the altercation, police were summoned to the scene and observed injuries to DiBartolo

and Castillo, and later observed that Lance Bachman had a "large laceration wound to the left

bicep."  See Investigation Report, Control # 00-7441 dated June 10, 2001, a copy of which is

attached hereto as Exhibit "E".  DiBartolo and Castillo were taken to Frankford-Torresdale

Hospital.  Exh. "E" at 1.  Gallagher drove Lance and Adam Bachman to the nearby Eighth Police

District.  Police officers then transported Lance Bachman to Nazareth Hospital.  Exh. "E" at 1.

The case was assigned to Detective Joseph Rovnan of the Fifteenth Police District.

Detective Rovnan did not know Gallagher prior to the incident.  After observing the physical

injuries to Lance Bachman, Detective Rovnan took statements from Lance Bachman, Adam

Bachman, and Jennifer Gallagher, who reported that DiBartolo stabbed Lance Bachman on his

arm while inside Wade's.  In particular, Gallagher stated that while she was inside Wade's, she

observed Adam Bachman in an argument and that "Lance went over to where his brother was

standing and was attempting to see what was going on when a little guy described as 5'8" brown

hair, medium build then in swinging motion reached over and stabbed Lance in his arm and

Lance fell to the ground."  See Statement of Jennifer Gallagher dated June 8, 2000, a copy of

3

which is attached hereto as Exhibit "F".  Gallagher further stated that at the hospital she identified DiBartolo "as the male that stabbed Lance."  Ibid.  She added that "when the fight was broken up out front," she and the Bachmans "just left and got in my car and I drove Lance and Adam to the 8th District."  Ibid.

At the conclusion of Rovnan's investigation, he arrested DiBartolo for his assault of Lance Bachman.  Exh. "E".  Shortly thereafter, Rovnan interviewed DiBartolo and Castillo, and based on these interviews, Rovnan arrested Adam Bachman, charging him with assault on DiBartolo.  See Investigation Report, # 00-7489 dated June 10, 2000, a copy of which is attached hereto as Exhibit "G".  Both the criminal case against DiBartolo and the criminal case against Adam Bachman were discharged due to lack of prosecution because no complaining witnesses appeared at Court hearings.  See records of Municipal Court, copies of which are attached hereto as Exhibit "H".  See also Memorandum of Internal Affairs Division Inspector Aaron Horne, dated August 9, 2002, a copy of which is attached hereto as Exhibit "I" at p.8.

Subsequently, DiBartolo filed a Complaint, with the Police Department alleging that Gallagher "failed to take police action after he was assaulted" and that she "lied to investigators about this incident." Exh. "I".  An Internal Affairs Division investigation ensued during which a further statement was obtained from DiBartolo, a copy of which is attached hereto as Exhibit "J", in which he affirmed that the first time he saw Gallagher was "outside the bar when she pulled up" in her car.  Exh. "J" at 2.  The Investigator sustained both allegations, finding as to the first that "[a]lthough Officer Gallagher cannot be expected to physically intervene in the 'barroom brawl' while she was off duty, she could have without compromising her safety or the safety of others remained at the scene and been a good witness for police officers responding to the

4

incident.  Furthermore, Officer Gallagher had ample opportunity to dial 9-1-1 inside Wade's Pub

before she walked out and also outside where three pay telephones are located within thirty feet

of the front door.  Officer Gallagher was neither a good witness, nor did she call 9-1-1.

Therefore, Officer Gallagher is in violation of Memorandum 98-1, Off-Duty Actions.  Section 1-

B states: *In most off-duty situations, the best action an officer can take is to be a good witness

and call 9-1-1*."  Exhibit "I" at 12.

 As to the second allegation, the Investigator found that Gallagher "was very selective on

exactly what she did and did not see or recall."  In addition to questioning her statement that

DiBartolo slashed Bachman without provocation and that Bachman was "gushing" blood, the

Investigator did not believe Gallagher's report that after the incident she and the Bachmans

walked to her car and left the scene.  He favored the statements of others, including DiBartolo,

that she pulled up to the Bachmans after the incident in her car and then drove off, and

accordingly cited her for "making false statements in response to an official Department

investigation."  Exhibit "I" at 13.

 Importantly, the Investigator did not question the view of all parties that, except for

driving the car in which the Bachmans left the scene, Gallagher had nothing to do with the

incident.  Further, he made no finding and adduced no evidence that she was involved in any way

with DiBartolo's arrest or prosecution.

### III. SUMMARY JUDGMENT STANDARD

 Defendants are entitled to a summary judgment on those counts of the Complaint with

respect to which

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment a matter of law.

Fed.R.Civ.P. 56(c). The Supreme Court has observed that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). The Third Circuit has added that "[t]here must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Armbruster v. Unisys Corp., 32 F. 3d 768, 777 (3d Cir. 1994).

It is well-settled that after the moving party establishes the absence of a material fact dispute, the non-moving party must respond with contradictory facts of record, and not mere denials. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986); First National Bank v. Lincoln National Life Insurance Co., 824 F. 2d 277, 282 (3ᵈ Cir. 1987). These facts of record must result in a "showing sufficient to establish the existence of [every] element essential to that party's case." Celotex, id, 477 U.S. at 322-24. As the Third Circuit stated in Williams v. Borough of West Chester, 891 F. 2d 458, 460 (3ᵈ Cir. 1989), "a nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." (citations omitted).

## IV.  LEGAL ARGUMENT

### A.    PLAINTIFFS' §1983 CLAIM AGAINST JENNIFER GALLAGHER FAILS AS A MATTER OF LAW

1.    **Gallgher was not acting "under color of state law".**

Plaintiffs allege that off-duty police officer Jennifer Gallagher violated their civil/constitutional rights protected by 42 U.S.C. § 1983.   To succeed in a § 1983 action, plaintiffs must establish that: (1) a deprivation of a constitutional or other federally secured right occurred, and (2) that the alleged deprivation was committed by a person (defendant) acting under color of state law.  See West v. Atkins, 487 U.S.42, 48, 108 S.Ct. 2250, 2254-55 (1988). See also Hicks v. Feeney, 770 F.2d 375, 377 (3d Cir. 1985).

The Third Circuit Court of Appeals has held that "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law" within meaning of § 1983.  Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994).  In Barna, supra, the Court considered claims by the victims – a husband and wife – of an alleged assault by two off-duty police officers that the officers violated their civil rights under § 1983.  One of the officers was related to the wife, and had followed the victims home at the request of another relative because the victims were driving after having been drinking.  Once the victims were home, they got into an altercation with the officers, who injured the husband. He returned to the scene with a shotgun before he was ultimately subdued.

The Barna court addressed the question of whether the officers before it had acted under color of state law by first noting that "off-duty police officers who purport to exercise official authority will generally be found to have acted under color of state law.  Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations.  On the other hand, a police officer's purely private

7

acts which are not furthered by any actual or purported state authority are not acts under color of state law." Barna, id, 42 F. 3d at 816 (citations omitted).

In Barna, the court was persuaded that the officers were not acting under color of state law even though one of them brandished a nightstick – an "objective indicia of police authority", according to the court – and made a threatening comment about their "jurisdiction." Barna, id, 42 F. 3d at 818. The court cited the facts that the officers were off-duty, and that they "did not identify themselves as police officers, they did not indicate that they were acting on official police business, and importantly, they did not attempt to arrest Mr. Barna, or otherwise invoke their police authority, during the initial phase of the altercation." Ibid. The Court concluded that there simply "was no evidence to indicate that the officers were on official police business." Barna, id, 42 F. 3d at 817.

These principles were applied by District Judge Ludwig in Hunte v. Darby Borough, 897 F. Supp. 839, 841 (E.D. Pa. 1995) to award a summary judgment to a police officer accused of assaulting a neighbor who had called him about alleged vandalism by the officer's nephew. Citing the fact that the officer was off-duty at the time of the assault, and in particular that he was "not in uniform, did not display a police badge, did not identify himself as a police officer and did not attempt to arrest anyone," Judge Ludwig concluded that the officer "did not manifest any indicia of police authority or purport to act as an officer" at the time of the incident. He then observed that plaintiffs submitted "no evidence, by affidavit, deposition or otherwise, to support the allegation that [the officer] was acting under the color of state law," and concluded that since plaintiff had " not produced any evidence to the contrary, summary judgment on this issue is required."

8

The same can be said of the present case, for the same reasons. Just like the officers in Barna, Gallagher was off-duty and never identified herself as a police officer or indicated she was acting on official police business. She was not wearing a police uniform,[2] did not display a badge or identification card, or identify herself as a police officer. Gallagher neither attempted to arrest DiBartolo or Castillo, nor otherwise invoked her police authority, and in fact never even spoke to the plaintiffs. DiBartolo in particular reported he never saw Gallagher until she was driving away. In fact, unlike the defendants in Barna, Gallagher never even displayed a weapon of any kind. Barna and Hunte compel the conclusion in the present case that Gallagher was not acting under color of state law, and therefore that the plaintiffs § 1983 claim fails.

 2.    **To the extent plaintiffs' claim is predicated on Gallagher's alleged failure to act, it is not actionable under § 1983.**

The alleged conduct that the courts in Barna and Hunte found not to be under color of state law involved affirmative actions – specifically assaults – by the police officers in question. Gallagher, by contrast, is accused in part of failing to act in order to prevent the violence that led to plaintiff DiBartolo's injuries. In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 197 (1989), the United States Supreme Court held that "a State's failure to protect an individual against private violence simply does not cause a violation of the Due Process Clause" that is actionable under § 1983. Thus, even were Gallagher not clearly outside the "color of state law" requirement, her lack of involvement in the altercation at issue would

_____

[2]This Court has also found that "acts committed by a police officer even while on duty and in full uniform were not under color of state law unless they are in some way related to the performance of police duties". Johnson v. Hackett, 284 F.supp.933,937 (E.D. Pa.1968).

preclude any liability on her part to the plaintiffs for violating their civil rights.

The Third Circuit has recognized an exception to the rule in <u>DeShaney</u> in cases where a "state-created danger" is established.  As explained by District Judge Joiner in <u>Gonzalez v. Angelilli</u>, 40 F. Supp. 2d 615, 619 (E.D. Pa. 1999), "[t]he state-created danger exception is essentially an outgrowth of the special relationship doctrine in that the threshold requirement is that there must be some affirmative action on the part of the state before liability may be imposed on the state or one of its actors."  Judge Ludwig identified four factors that must be established before the state-created danger exception will be applied: "(1) the harm ultimately caused was forseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur."

Applying these factors to the present case, it is clear that the state-created danger exception does not apply.  There is no reason to believe that Gallagher could have forseen the harm that came to plaintiffs.  There is no evidence that she took any action in connection with the altercation that led to the injuries, let alone that she acted "in willful disregard" for the safety of either DiBartolo or Castillo.  Finally, while "some relationship" existed between Gallagher and the state generally, there was no relationship at the time of the incident since she was off-duty and, in any event, she did not use any authority she had by virtue of the relationship "to create an opportunity that otherwise would not have existed" for the Bachmans' "crime" to occur. Gallagher did not, for example, detain or forceably restrain the plaintiffs so that the Bachmans could assault them.  Accordingly, plaintiffs have no basis to contend that, in failing to take any

10

action to prevent their injuries, Gallagher deprived them of any rights to which they are entitled under the United States Constitution.

### 3.    Gallagher did not conspire to deprive plaintiffs of their civil rights.

Finally, Plaintiffs aver that Gallagher also violated their civil rights by "conspiring" with certain unnamed and unidentified city officers "to engage in conduct violative of the civil and/or constitutional rights of the Plaintiffs."  Complaint, ¶ 45(d).  The Court should dismiss this claim because plaintiffs have not even attempted to adduce the necessary factual evidence necessary to establish it.

To demonstrate a conspiracy under § 1983, plaintiff must show: (1) there was a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences; (2) the purpose of the plan was to violate the constitutional rights of the plaintiff; (3) an overt act resulted in the actual deprivation of the plaintiff's constitutional rights; and (4) the constitutional violation was the result of an official policy or custom of the municipality. Kelleher v. City of Reading, 2002 Westlaw 1067442 (ED.Pa., May 29, 2002), Citing Seiger v. Township of Tinicum, Civ.A. No. 89-5236, 1990 WL 10349, at *2 (E.D.Pa. Feb. 6, 1990).  At no point have plaintiffs proffered any evidence of a "plan" in which Gallagher was involved to deprive plaintiffs of their rights. They have not shown that Gallagher had a relationship with Detective Rovnan, or indeed ever spoke with him except in connection with her interview.  Plaintiffs are similarly unable to point to any "overt act" by Gallagher to further the supposed conspiracy.  Since no genuine issue of material fact exists, plaintiffs' general averments of conspiracy regarding a § 1983 claim fail as a matter of law.

### B.    PLAINTIFFS' STATE LAW CLAIMS AGAINST JENNIFER GALLAGHER FAIL AS A MATTER OF LAW

In addition to the § 1983 claims discussed above, plaintiffs assert state law claims of false arrest/imprisonment, and malicious prosecution.  (See Complaint, Exhibit A hereto, Counts VII and VIII).  Since plaintiffs  § 1983 claims are not actionable for the reasons set forth above, their state claims should also be dismissed for lack of jurisdiction.  Apart from this procedural point, the claims should also be dismissed because they fail as a matter of law.

### 1. Gallagher neither falsely arrested nor falsely imprisoned the plaintiffs.

Plaintiff asserts both a false arrest claim and a false imprisonment claim.  Under Pennsylvania law, "in cases where defendant purports to act for the purpose of securing the administration of the law without actual legal justification, 'false arrest' is synonymous with false imprisonment. . . ." Gagliardi v. Lynn, 446 Pa. 144, 149, 285 A.2d 109, 111 (1971).  To establish either, Pennsylvania law requires plaintiff to prove that the process used for the arrest was void on its face, or that the issuing tribunal was without jurisdiction; it is not sufficient to show merely that the charges were unjustified or were dismissed.  Strickland v. University of Scranton, 700 A.2d 979, 984 (Pa. Super. 1997), citing LaFrankie v. Miklich, 152 Pa. Commw. 163, 168, 618 A.2d 1445 (1992).  As District Judge Dalzell pointed out in Torres v.McLaughlin, No. CIV.A. 96-5865, 1996 WL 680274 (E.D. Pa. Nov. 21 1996), at *4 (a copy of which is attached hereto as Exhibit "K"), allegations that a warrantless arrest was not supported by probable cause advance a claim of false arrest at common law . . . .  Typically, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement;

12

(3) the plaintiff did not consent to the confinement; and (4) the defendant had no privilege to cause the confinement."

Plaintiffs cannot establish that Gallagher purported to act for the purpose of securing the administration of the law without legal justification. To begin with, Detective Rovnan was solely responsible for investigating this case. His independent investigation of this case led him to conclude that this was a typical bar fight and that both DiBartolo and Adam Bachman were at fault. See Interview of Detective Joseph Rovnan, dated February 8, 2002, a copy of which is attached hereto as Exhibit "L" at p.1. Rovnan interviewed Lance Bachman, Adam Bachman, Jennifer Gallagher, Angelo DiBartolo, Steven Castillo, and Roger Scheuer. He also observed injuries on both DiBartolo and Lance Bachman. Based on his observation of visible physical injuries to both DiBartolo and Lance Bachman, combined with the interviews of the aforementioned individuals, Detective Rovnan determined that both parties were at fault and subsequently filed charges against both DiBartolo and Adam Bachman.

Gallagher played no role in this process other than to submit to an interview on June 8, 2000. She made no investigation or arrest. She did not meet with Detective Rovnan or anyone else for the purpose of instituting charges against either plaintiff. There is no factual basis for this Court to conclude that Gallagher somewhere entered into a meeting of the minds with Detective Rovnan and/ or other police officers to have plaintiff illegally arrested and prosecuted in violation of DiBartolo's constitutional rights. See Complaint, Exhibit "A" hereto, Count VI.

Moreover, plaintiffs have made no assertion that the process used for the arrest of DiBartolo was void on its face or that the issuing tribunal was without jurisdiction. In this

13

case, after Detective Rovnan determined that both DiBartolo and Lance Bachman were at fault, he filed charges in accordance with the Police Department's procedures. The District Attorney's Office subsequently reviewed the charges and used them for the basis of proceeding against both DiBartolo and Adam Bachman. Gallagher played no role in this process. Accordingly, no genuine issue of material fact exists to support plaintiffs' claim of false arrest/false imprisonment, and judgement on this claim should be entered in favor of Gallagher.

## 2. __Gallagher is not liable to plaintiffs for malicious prosecution__.

DiBartolo also claims that Gallagher subjected him to malicious prosecution. Allegations in a § 1983 case "seeking damages for an arrest made pursuant to an arrest made pursuant to an arrest warrant that was not supported by probable cause, or for the period after legal process was initiated, are analogous to the common law tort of malicious prosecution." Torres, ibid. The state law tort requires plaintiff to prove that the defendant instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) after proceedings have terminated in favor of the plaintiff. Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249, 518 Pa. 517, 520-21, 544 A.2d 940 (1988); LaFrankie v. Miklich, supra.

As stated above, Gallagher played no role in the institution of proceedings against the plaintiffs, and thus the Court need not even consider the elements of a malicious prosecution claim. The "probable cause" a defendant must establish to defeat a malicious prosecution claim does not require proof "beyond a reasonable doubt." Rather, a defendant need only show "a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that a party is guilty of the offense." Strickland v.

University of Scranton, supra, 700 A.2d at 984.

As stated above, Jennifer Gallagher played no role in the arrest of DiBartolo, and so this Court can deny plaintiffs' malicious prosecution claim without consideration of this or any other element. Should it decide to do so, however, the Court will find that the evidence clearly establishes that probable cause existed for plaintiff DiBartolo's arrest. Detective Rovnan took statements from Lance Bachman, Adam Bachman, Jennifer Gallagher, Angelo DiBartolo, Steven Castillo, and another witness, Roger Scheuer. Rovnan also observed significant physical injuries on the persons of Angelo DiBartolo and Lance Bachman, and concluded that there were injuries all around and it seemed like a typical bar fight had occurred with "both parties at fault". Exh. "L" at 1. Then, as set forth above, Detective Rovnan submitted the charges to the Philadelphia District Attorney's Office, who subsequently approved them against DiBartolo and Adam Bachman. Plaintiffs can point to nothing about this case that would suggest that this was other than a routine prosecution of a public disturbance or that the prosecutors lacked a "reasonable ground of suspicion" to proceed with the case against DiBartolo.

Furthermore, plaintiffs cannot sustain their burden of proving that the prior proceedings terminated in DiBartolo's favor. See Junod v. Bader, 312 Pa. Super.92,95, 458 A.2d 251, 253 (1983). DiBartolo must establish that there was a resolution of the first trial clearly favorable to him and consistent with his innocence, such as acquittal or reversal of conviction. Id., citing Anolik v. Marcovsky, 122 Pa. Super. 133, 186 A. 418 (1936) (emphasis added). In the words of Judge Dalzell, "[t]ermination vel non, however, is not sufficient. Instead, the 'favorable termination' necessitates that the termination be in a fashion that suggests that the plaintiff is innocent". Torres, id at *6-*7.

15

Lance Bachman's failure to show at court hearings, and the resulting dismissal of charges against Plaintiff DiBartolo, does not constitute a favorable termination sufficient to support a state law malicious prosecution claim.  They do not in any way suggest that DiBartolo was innocent, but simply that the prosecution was denied the evidentiary basis it needed in order to proceed.  Therefore, plaintiffs' malicious prosecution claim fails as a matter of law.


## V.  CONCLUSION

For all the foregoing reasons, Defendant Jennifer Gallagher's Motion for Summary Judgment should be granted and plaintiffs' claims against Jennifer Gallagher should be dismissed with prejudice.

Respectfully submitted,


Dated:  April 4, 2003

_____

Timothy L. Strange
Monteverde McAlee & Hurd
1617 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA 19103
(215) 557-2900

F:\Wp\Docs\10,117-001\galmot2.wpd

## CERTIFICATE OF SERVICE

I, Timothy L. Strange, hereby state that on April 4, 2003. I hereby served a copy of the foregoing Motion for Summary Judgment and accompanying Memorandum of Law by first-class mail upon counsel for all parties addressed as follows:

Saul J. Steinberg, Esquire
Parkade Building, Suite 503
519 Federal St
Camden, NJ 08103

Phillip A. Ryan
German, Gallagher, & Murtaugh
200 South Broad St., 5th floor
Philadelphia, P A 19102

Lynne A. Sitarski
City of Philadelphia Law Department
Deputy City Solicitor
1515 Arch St., 14th fl
Philadelphia, PA 19102

John J. McCreesh, IV
7053 Terminal Square
Upper Darby, PA 19082

18