IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELO T. DIBARTOLO and<br>STEVEN CASTILLO, | :<br>:   CIVIL ACTION<br>: |
| v. | :<br>: |
| LANCE BACHMAN, et al. | :   NO. 02-3813 |

**MEMORANDUM**

Giles, C.J.                                                                                                          October ___, 2003

      Angelo DiBartolo and Steven Castillo bring this action against Lance Bachman, Adam Bachman, Jennifer Gallagher, the City of Philadelphia, the City of Philadelphia Police Department, and Wade's Irish Pub, seeking damages pursuant to 42 U.S.C. § 1983 and the common law of Pennsylvania, to redress injuries suffered as a result a bar fight and subsequent related events. On June 6, 2003, summary judgment was entered in favor of the City of Philadelphia and the City of Philadelphia Police Department. Now before the court is Jennifer Gallagher's Motion for Summary Judgment on all counts, made pursuant to Federal Rule of Civil Procedure 56(c). For the reasons that follow, the motion is granted.

**Factual Background**

      The facts in the light most favorable to the non-moving party follow. On June 8, 2000, a group of individuals, including DiBartolo, Castillo, Lance Bachman, and Adam Bachman, were involved in a physical alteration at Wade's Pub. (Def.'s Mem. of Law in Supp. of Summ. Jud. at 1.) DiBartolo recalled, in a letter submitted to the Philadelphia Police Department, that he had noticed a friend involved in an argument. (Id.) He "went over to the group and asked what the problem was. Before [he] could completely ask [he] was hit with several bottles on [his] head."

(Def.'s Ex. B.) Jennifer Gallagher, an off-duty Philadelphia Police Officer who was in the bar with her then-boyfriend Lance Bachman, contends that she saw a male, later identified as DiBartolo, stab Lance Bachman. (Def.'s Ex. F at 1.) Following these events, the bar security forces removed DiBartolo from the premises. He claimed that he "was being punched the entire time [he] was literally thrown out of the bar." (Def.'s Ex. D at 2.)

Castillo also left Wade's and he "grabbed [DiBartolo] outside the bar and put his shirt up to his face to try [to] stop the bleeding and began to walk [DiBartolo] around to the front of the bar to get to where his vehicle was parked . . ." (Def.'s Ex. C at 4.) As DiBartolo and Castillo made their way outside, they were confronted by the same individuals that they fought with with inside. (Id.) DiBartolo later described that:

> When they noticed me they all charged me. I tried to retreat and was asking them to 'let it be', and that 'I did not want to fight' They told me that 'I should have thought of that in the first place'. I was struck on the head with another bottle by Lance Bachman. I was able to take his f[ee]t from under him and threw him on the ground. I was attempting to hold him down, at which time his brother Adam Bachman slashed me on the side of my face/jaw with a broken bottle.

(Def.'s Ex. B.)

Gallagher gave a different account to the officer that interviewed her, stating that she and the Bachmans went in front of the bar and two or three males came around and started fighting with Lance Bachman. (Def.'s Ex. F at 2.)

Gallagher was not dressed in her police uniform, and at no point did she identify herself as an officer or show her badge. She did not attempt to break up the fight. Gallagher went to her car and pulled it up to the fight scene to give Adam and Lance Bachman an opportunity to depart from the scene. The fight broke up when the Adam and Lance Bachman got into the car. (Id.)

2

Gallagher drove them to the nearby Eighth Police District, which was her local station.  There, it was observed that Lance Bachman had a "large laceration wound to the left bicep," and he was taken to Nazareth Hospital.  (Def.'s Ex. E at 1.)  Police were summoned to Wade's Pub and observed injuries to DiBartolo and Castillo.  (Id.)  Both were taken to Frankford-Torresdale Hospital.  (Id.)

The case was assigned to Detective Joseph Ronvan of the Fifteenth Police District.  Detective Ronvan did not know Gallagher prior to the incident.  Gallagher, Adam Bachman, and Lance Bachman were all interviewed by Detective Ronvan.  At the conclusion of the investigation, DiBartolo was arrested for assaulting Lance Bachman.  (Id. at 2.)  Subsequently Detective Ronvan interviewed DiBartolo and Castillo, and based upon their accusations, Adam Bachman was arrested for assaulting DiBartolo.  (Def.'s Ex. G.)  Both the criminal case against DiBartolo and the criminal case against Adam Bachman were discharged for lack of prosecution.  (Def's Ex. H & I.)  Neither showed up for the criminal proceedings.  (Id.)

Later, DiBartolo filed a complaint with the Police Department alleging that Gallagher had "failed to take police action after he was assaulted" and that she "lied to investigators about this incident." (Def.'s Ex. I.)  An Internal Affairs Division (IAD) investigation was conducted. IAD concluded in a report that, "[a]lthough Officer Gallagher cannot be expected to physically intervene in the 'barroom brawl' while she was off duty, she could have without compromising her safety or the safety of others remained at the scene and been a good witness for the police officers responding to the incident.  Furthermore, Officer Gallagher has ample time to dial 9-1-1 inside Wade's Pub before she walked out and also outside where three pay telephones are located within thirty feet of the front door.  Officer Gallagher was neither a good witness, nor did she call

9-1-1. Therefore, Officer Gallagher is in violation of Memorandum 98-1, Off-Duty Actions. Section 1-B states: In most off-duty situations, the best action an officer can take is to be a good witness and call 9-1-1." (Def.'s Ex. I at 12.) Regarding DiBartolo's second allegation that Gallagher concluded to investigators, the IAD found that Gallagher "was very selective on exactly what she did and did not see or recall," (Id.) but it did not find that she lied about any material fact relating to the fight or injuries. It is undisputed that a fight occurred, observable injuries were sustained, and injuries were treated at area hospitals.

## Discussion

**Summary Judgment Standard**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In order to avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23. In such a case, there can be but one reasonable conclusion as to the verdict under the governing law and judgment must be awarded in favor of the moving party. Anderson, 477 U.S.

at 250 (noting that the standard is the same as on a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a)).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. The moving party is not required to produce any evidentiary materials to negate the opposing party's claim. <u>Id.</u> The burden then shifts to the nonmoving party to designate, though the use of and affidavits and other evidentiary materials of record, specific facts showing that there is a genuine issue for trial. <u>Id.</u> at 324; Fed. R. Civ. P. 56(e). The evidence of the nonmoving party is to be believed and this court must draw all reasonable and justifiable inferences in its favor. <u>Anderson</u>, 477 U.S. at 255. However, it is clear from the rules and Supreme Court decisions that the nonmoving party must present to the court some competent evidence from which the court can draw such inferences.

## § 1983

Plaintiffs allege that off-duty police officer Jennifer Gallagher violated their constitutional rights and seek redress under 42 U.S.C. § 1983. To succeed in a § 1983 action, plaintiffs must establish: 1) a deprivation of a constitutionally or federally secured right occurred, and 2) that the alleged deprivation was committed by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Hicks v. Feeney</u>, 770 F.2d 375, 377 (3d Cir. 1985).

### "Under Color of State Law"

An explicit requirement for liability under § 1983 is that the defendant must have acted "under color of state law." 42 U.S.C. § 1983. Gallagher argues that none of her actions on the night in question was under color of state law because she was off-duty and never represented

that she had any official authority. (Def.'s Mem. in Supp. of Summ. Jud. at 6-7.) The third circuit has held that, "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law" within the meaning of § 1983. Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994).

In Barna considered if two off-duty officers had acted under color of state law when they assaulted two individuals. The court found that "off-duty police officers who purport to exercise official authority will generally be found to have acted under color of state law. Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations." Id. at 816. On the other hand, officers were found not to have represented themselves in an official capacity even though one of them brandished a nightstick and made a threatening comment about police "jurisdiction." Id. at 818. They were not acting under color of state law because they "did not identify themselves as police officers, they did not indicate that they were acting on official police business, and importantly, they did not attempt to arrest Mr. Barna, or otherwise invoke their police authority, during the initial phase of the altercation." Id.

Barna controls here. Gallagher was off-duty and was not in uniform. She never displayed a badge or identified herself in any way as a police officer. She did not indicate that she was acting on any official police business, nor did she attempt to intervene in the fight. Further, she did not attempt to arrest DiBartolo or Castillo. Indeed, DiBartolo's complaint to IAD was that she failed to do anything as a police officer.

There is no evidence that she even attempted to speak with either plaintiff. The evidence

is unrebutted that she consciously acted as a private individual, rescuing her companions from a fight scene and driving them to a local police station where they would tell their version of the altercation.

Plaintiffs argue that it is significant that the events in question occurred while in her official jurisdiction. However, that fact has no significance. Without manifestations of police authority by her, Gallagher cannot be found to be acting under color of state law. Under the stated facts, Gallagher never purported to act in any official capacity and, thus, was not acting under color of state law under § 1983. Her actions were less indicative of official authority than those of the officers in Barna found to be acting as private individuals. Barna compels the court's conclusion that Gallagher did not act under the color of state law, and that plaintiffs § 1983 claim fails.

**Failure to Act**

Plaintiffs further allege that Gallagher violated a constitutionally secured right by failing to intervene in the bar altercation and potentially prevent the violence that led to DiBartolo's injuries. The Supreme Court has found that the State rarely, if ever, has a constitutionally secured affirmative duty to act. In Deshaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 197 (1989), the Supreme Court held that "a State's failure to protect an individual against private violence simply does not cause a violation of the Due Process Clause" actionable under § 1983. Under the rule established in Deshaney, lack of action by Gallagher fails to make out a constitutional violation.

Plaintiffs argue that Gallagher's actions fall into a narrow exception to Deshaney, the State-created danger doctrine, which may allow liability in situations where the State itself has

7

placed plaintiff in a position of danger and harm results from actions of third parties. Plaintiffs argue that this court is bound by the standard put forth in <u>Gonzalez v. Angelilli</u>, 40 F. Supp. 2d 615 (E.D. Pa. 1999), applying a multi-prong test to determine the relationship of the State to the plaintiff and the harm. <u>Gonzalez</u> is not appellate authority and, in any event, no action was taken by the State. If any zone of danger existed, plaintiffs' placed themselves within it. The State-created danger argument is without merit.

### Civil Conspiracy

While plaintiffs initially alleged a claim of civil conspiracy under § 1983, they now admit that there is no evidence that any member of the Philadelphia Police Department actively conspired with Gallagher. Thus, the civil conspiracy claim is dismissed.

### State Law Claims

### Malicious Prosecution

In order to prevail on a claim for malicious prosecution in Pennsylvania, a plaintiff must demonstrate that: 1) the underlying criminal proceedings terminated in plaintiff's favor; 2) there was no probable cause for the criminal proceedings; and 3) the proceedings were initiated with malice, primarily for a purpose other than bringing an offender to justice. <u>Hornin v. Montgomery Ward & Co.</u>, 120 F.2d 500, 503 (3d Cir. 1941); <u>Stinson v. Smith</u>, 196 A. 843, 845 (Pa. 1938).

If probable cause existed to arrest DiBartolo, without relying upon the witness statement made by Gallagher, a malicious prosecution claim cannot lie. To show probable cause, there must have been a "reasonable ground of suspicion supported by the circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that a party is guilty of the offense." <u>Strickland v. University of Scranton</u>, 700 A.2d 979, 984 (Pa. Super. 1997) (defining in

context of tort of malicious prosecution).

Here, sufficient evidence independent of Gallagher's statement established probable cause to arrest DiBartolo. Detective Rovnan initially took statements from Lance Bachman and Adam Bachman. Additionally, Detective Rovnan observed physical injuries on the person of Lance Bachman. This information, as well as information that DiBartolo was at a hospital for treatment of his injuries, led Detective Rovnan to conclude that a typical bar fight had occurred with "both parties at fault." (Def.'s Ex. L.) Information supplied by Gallagher did not add materially to the facts known to Detective Rovnan, even if she lied. While she provided an account of the fight, such only added details to the general scenario provided from the other statements. Thus, the arrest warrant was supported by probable cause without information received from Gallagher. Because such probable cause existed, a claim for malicious prosecution cannot result from Gallagher's statement to Detective Rovnan.

Further, even if Gallagher's statement had been necessary for probable cause, plaintiffs cannot sustain their burden of proving that the prior proceedings terminated in DiBartolo's favor. DiBartolo's case was dismissed <u>vel non</u>, or for lack of prosecution. "Termination <u>vel non</u> . . . is not sufficient. Instead, the 'favorable termination' necessitates that the termination be in a fashion that suggests that the plaintiff is innocent." <u>Torres v. McLaughlin</u>, No. 96-5865, 1996 WL 680274, *4 (E.D. Pa. Nov. 21, 1996).

### False Arrest & False Imprisonment

Plaintiffs assert both a false arrest claim and a false imprisonment claim against Gallagher. Under Pennsylvania law, "in cases where defendant purports to act for the purpose of securing the administration of the law without actual legal justification, 'false arrest' is

9

synonymous with false imprisonment. . . ." Gagliardi v. Lynn, 285 A.2d 109, 111 (Pa. 1971). The Pennsylvania Supreme Court found that this relation was necessary because "[e]very arrest without a warrant involves a confinement, which if not privileged, constitutes a false imprisonment." Id.

In order to prevail on a claim for false imprisonment in Pennsylvania, a plaintiff must demonstrate that a defendant: 1) acted intending to confine a person within boundaries fixed by the defendant; 2) the defendant's act directly or indirectly resulted in such confinement of that person; and 3) the person confined is conscious or the confinement or is harmed by it. Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998); Krochalis v. Ins. Co. of North America, 629 F. Supp. 1360, 1370 (E.D. Pa. 1985).

Plaintiffs cannot establish that Gallagher's acts directly or indirectly resulted in DiBartolo's arrest and confinement. The evidence shows that Gallagher drove Lance Bachman and Adam Bachman to the police station and that all three individuals were interviewed. At no point did she attempt to arrest DiBartolo or to investigate the matter herself. Detective Ronvan was solely responsible for investigating the case. As previously detailed, there was evidence, independent of Gallagher's interview, sufficient to establish probable cause for the arrest. There is no factual basis for any assertion that Gallagher at some point entered into a meeting of the minds with Detective Ronvan and/or other police officers to have plaintiff illegally arrested and prosecuted.

Detective Rovnan determined that DiBartolo and Lance Bachman were both at fault. He filed charges against both individuals in accordance with the Police Department's procedures. The District Attorney's Office subsequently reviewed the charges and used them as the basis for

criminal prosecution. Gallagher had no role in this process. Therefore, no genuine issue of material fact exists to support plaintiff's claim of false arrest or false imprisonment.

Accordingly, summary judgment in favor of Gallagher is granted on all counts. An appropriate order follows.